**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

| | |
|---|---|
| CLAUDIA HUIZAR, | No. CV 11-7246-PLA |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

I.

**PROCEEDINGS**

Plaintiff filed this action on September 14, 2011, seeking review of the Commissioner's denial of her applications for Supplemental Security Income payments and Disability Insurance Benefits.  The parties filed Consents to proceed before the undersigned Magistrate Judge on September 28, 2011.  Pursuant to the Court's Order, the parties filed a Joint Stipulation on May 15, 2012, that addresses their positions concerning the disputed issues in the case.  The Court has taken the Joint Stipulation under submission without oral argument.

/

/

## II.

## BACKGROUND

Plaintiff was born on November 28, 1967.  [Administrative Record ("AR") at 48-51.]  She has a high school education [AR at 115], and past relevant work experience as a clerk, a receptionist, and a secretary.  [AR at 109.]

On August 28, 2008, plaintiff filed an application for Disability Insurance Benefits and protectively filed an application for Supplemental Security Income payments, claiming an inability to work since August 31, 2007, due to bipolar disorder, back pain, headaches, cervical kyphosis, anxiety, panic attacks, and forgetfulness.  [AR at 48-51, 60, 88-93, 107-16.]  After her applications were denied initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  [AR at 52-56, 59-66.]  A hearing was held on February 9, 2010, at which time plaintiff appeared with counsel and testified on her own behalf.  [AR at 24-47.]  On March 12, 2010, the ALJ determined that plaintiff was not disabled.  [AR at 9-19.]  On July 6, 2011, the Appeals Council denied plaintiff's request for review.  [AR at 1-4.]  This action followed.

## III.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Moncada v. Chater, 60 F.3d 521, 523 (9th Cir. 1995); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

In this context, the term "substantial evidence" means "more than a mere scintilla but less than a preponderance -- it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  Moncada, 60 F.3d at 523; see also Drouin, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Drouin, 966 F.2d at 1257; Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989).  Where the evidence is susceptible to more than one rational interpretation, the Court

2

1   must defer to the decision of the Commissioner.  <u>Moncada</u>, 60 F.3d at 523; <u>Andrews v. Shalala</u>,

2   53 F.3d 1035, 1039-40 (9th Cir. 1995); <u>Drouin</u>, 966 F.2d at 1258.

3

4                                              **IV.**

5                            <u>**THE EVALUATION OF DISABILITY**</u>

6          Persons are "disabled" for purposes of receiving Social Security benefits if they are unable

7   to engage in any substantial gainful activity owing to a physical or mental impairment that is

8   expected to result in death or which has lasted or is expected to last for a continuous period of at

9   least twelve months.  42 U.S.C. § 423(d)(1)(A); <u>Drouin</u>, 966 F.2d at 1257.

10

11  **A.      THE FIVE-STEP EVALUATION PROCESS**

12         The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing

13  whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; <u>Lester v. Chater</u>, 81 F.3d 821,

14  828 n.5 (9th Cir. 1995, <u>as</u> <u>amended</u> April 9, 1996).  In the first step, the Commissioner must

15  determine whether the claimant is currently engaged in substantial gainful activity; if so, the

16  claimant is not disabled and the claim is denied.  <u>Id.</u>  If the claimant is not currently engaged in

17  substantial gainful activity, the second step requires the Commissioner to determine whether the

18  claimant has a "severe" impairment or combination of impairments significantly limiting her ability

19  to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  <u>Id.</u>

20  If the claimant has a "severe" impairment or combination of impairments, the third step requires

21  the Commissioner to determine whether the impairment or combination of impairments meets or

22  equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404,

23  Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded.  <u>Id.</u>

24  If the claimant's impairment or combination of impairments does not meet or equal an impairment

25  in the Listing, the fourth step requires the Commissioner to determine whether the claimant has

26  sufficient "residual functional capacity" to perform her past work; if so, the claimant is not disabled

27  and the claim is denied.  <u>Id.</u>  The claimant has the burden of proving that she is unable to

28  perform past relevant work.  <u>Drouin</u>, 966 F.2d at 1257.  If the claimant meets this burden, a

                                                3

1    prima facie case of disability is established.  The Commissioner then bears the burden of

2    establishing that the claimant is not disabled, because she can perform other substantial gainful

3    work available in the national economy.  The determination of this issue comprises the fifth and

4    final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828

5    n.5; Drouin, 966 F.2d at 1257.

6

7    **B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

8           In this case, at step one, the ALJ found that plaintiff had not engaged in any substantial

9    gainful activity since August 31, 2007, the alleged disability onset date.  [AR at 12.]  At step two,

10   the ALJ concluded that plaintiff "has the following severe combination of medically determinable

11   conditions of ill-being: a small, two millimeter disc bulge at C4-C5 without severe central stenosis

12   or foraminal narrowing at any level; cervical kyphosis; a three millimeter left lateral disc bulge at

13   L2-L3 with mild left foraminal narrowing; three millimeter disc bulges at L4-L5 and L5-S1, both with

14   facet hypertrophy; a posterior annular tear in the posterior disc margin at L5-S1; and bipolar

15   disorder."  [AR at 12 (internal citations omitted).]  At step three, the ALJ determined that plaintiff

16   does not have an impairment or combination of impairments that meets or equals any of the

17   impairments in the Listing.  [AR at 14.]  The ALJ further found that plaintiff retained the residual

18   functional capacity ("RFC")[1] to perform "the full range of sedentary work work as defined in 20

19   C.F.R. [§§] 404.1567(a) and 416.967(a)."[2]  [AR at 15.]  At step five, the ALJ concluded that plaintiff

20   is capable of performing her past relevant work as a receptionist.  [AR at 18.]  Accordingly, the ALJ

21   determined that plaintiff was not disabled from August 31, 2007, to March 12, 2010, the date of

22   the decision.  [AR at 18-19.]

23   /

24   _____

25   [1]    RFC is what a claimant can still do despite existing exertional and nonexertional
     limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

26
     [2]    "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting
27   or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined
     as one which involves sitting, a certain amount of walking and standing is often necessary in
28   carrying out job duties."  20 C.F.R. §§ 404.1567(a), 416.967(a).

4

# V.

## __THE ALJ'S DECISION__

Plaintiff contends that the ALJ failed to (1) recontact her treating physician to determine whether plaintiff needs a cane to walk, and (2) properly consider whether plaintiff meets and/or equals Listing 1.04. [Joint Stipulation ("JS") at 3-4, 7-13.] As set forth below, the Court respectfully disagrees with plaintiff and affirms the ALJ's decision.

## A.    ALJ'S FAILURE TO RECONTACT UNNAMED DOCTOR

Plaintiff asserts that "[t]he ALJ discounted Plaintiff's statement that her cane was prescribed without requesting additional information," and contends that the ALJ erred by "failing to recontact ... Plaintiff's treating physician or physicians to determine whether ... Plaintiff had a medical need for a cane." [JS at 4.]

While plaintiff bears the burden of proving disability, the ALJ in a social security case has an independent "'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered.'" Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996) (quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)). This duty extends to the represented as well as to the unrepresented claimant. Id.

As part of this duty, the ALJ has an obligation to take reasonable steps to ensure that issues and questions raised by medical evidence, particularly evidence from treating physicians, are addressed so that the disability determination is fairly made on a sufficient record of information, both favorable and unfavorable to the claimant. See Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999); Cox v. Califano, 587 F.2d 988, 991 (9th Cir. 1978). The ALJ's duty to recontact a treating physician arises when the evidence received from that physician is inadequate to determine disability, contains a conflict or ambiguity, or is not based on medically acceptable techniques. 20 C.F.R. §§ 404.1512(e), 416.912(e). In addition, the ALJ has a duty to try to obtain additional evidence where there is not "sufficient evidence to decide whether [the claimant is] disabled." 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).

On October 6, 2008, plaintiff completed a Function Report. [AR at 126-33.] On the form, plaintiff was asked whether she uses any of a variety of assistive aids, including crutches, a walker, a wheelchair, a cane, and a brace or splint. [AR at 132.] Plaintiff checked the box indicating that she uses a cane, and wrote next to the box, "up steep hill." [Id.] When asked which of the assistive aids, if any, were prescribed by a doctor, plaintiff stated, "cane." [Id.] When asked when it was prescribed, plaintiff stated "LA County" and "January 2008." [Id.] Finally, in response to the question, "When do you need to use these aids?" plaintiff stated: "When I can't walk on the steep hills [in] LA or other cities." [Id.] A consultative examiner's Internal Medical Consultation Report from the same date states that plaintiff represented she "occasionally uses a cane as an assistive device," but the report does not contain any other information regarding the cane, including whether it was prescribed. [AR at 222-26.] At plaintiff's February 9, 2010, hearing before the ALJ, plaintiff did not refer to her need for a cane or to any prescription from a doctor for a cane. [See AR at 26-46.]

In his decision, the ALJ acknowledged that plaintiff "has alleged using a prescribed cane," citing the October 6, 2008, Function Report, but stated that he was "unable to find evidence that such a device was prescribed by a physician." [See AR at 16.]

The ALJ had no duty to recontact plaintiff's treating physician(s) or to try to obtain additional evidence concerning plaintiff's use of a cane. First, the duty to recontact a treating physician arises when the evidence received *from that physician* is inadequate or ambiguous. See 20 C.F.R. §§ 404.1512(e), 416.912(e). Plaintiff points to no evidence from *any* treating physician reflecting that he or she prescribed plaintiff a cane, and the Court, following a thorough review of the record, has found no such evidence.[3] As the record contains no inadequate or ambiguous evidence from any treating physician concerning a cane, the ALJ's duty to recontact plaintiff's

--------

[3]    Moreover, in an undated Third Party Function Report [AR at 134-41], plaintiff's daughter was asked -- in a manner identical to that in the form plaintiff completed -- whether plaintiff uses any of a variety of assistive aids, including a cane, whether any identified assistive aid was prescribed by a doctor, when it was prescribed, and when plaintiff needs to use it. [Compare AR at 132 with AR at 140.] Plaintiff's daughter did not check the box indicating that plaintiff uses a cane, or provide a response to any of the other questions. [See AR at 140.]

1   treating physician(s) was not triggered here.  Second, the ALJ had no duty to try to obtain

2   additional evidence because the medical evidence in the record was sufficient to determine

3   plaintiff's ability to work.  See 20 C.F.R. §§ 404.1527(c)(3), 416.927(c)(3).  As noted by the ALJ

4   in his decision, the only treating physician opinions concerning plaintiff's ability to work consisted

5   of temporary restrictions.  [See AR at 17.]  Of those opinions, only one was rendered during the

6   period of plaintiff's alleged disability -- on August 1, 2009, plaintiff was hospitalized for a day for

7   acute abdominal pain and discharged with instructions to rest in bed for the first 24 hours, and

8   then gradually resume normal activity if the pain was gone.  [See AR 278-79.]  Moreover, the

9   consultative examiner opined on October 6, 2008, that plaintiff can perform light work [see AR at

10  226], and two non-examining physicians agreed with that assessment on October 22, 2008, and

11  March 5, 2009, respectively.  [See AR at 242-26.]  Thus, there was sufficient evidence in the

12  record to determine that plaintiff retains the RFC to perform sedentary work, which the ALJ

13  concluded would "extend[] [plaintiff] the benefit of the doubt" despite assigning "significant weight"

14  to the opinion rendered by the consultative examiner and non-examining physicians that plaintiff

15  can perform light work.  [See AR at 17.][4]  Accordingly, neither the ALJ's duty to recontact plaintiff's

16  unnamed treating physician, nor his duty to try to obtain additional evidence, was triggered in this

17  case.

18          Further, the ALJ faithfully discharged his duty to develop the record by allowing plaintiff to

19  supplement the record.  See Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001) (internal

20  citation omitted) ("The ALJ may discharge [his] duty [to develop the record] in several ways,

21

22          [4]   Moreover, plaintiff points to no evidence that the use of a cane occasionally or while walking

23  on steep hills would preclude an RFC for sedentary work and, in any event, the case law indicates
    that such a contention would fail.  See, e.g., Tommasetti v. Astrue, 533 F.3d 1035, 1038, 1042

24  (9th Cir. 2008) (affirming the ALJ's determination that the plaintiff was "not disabled" based on his
    ability to perform sedentary work, even though the plaintiff testified that he intermittently used a

25  cane); Tate v. Astrue, 431 Fed. Appx. 565, 566 (9th Cir. May 5, 2011) (citable for its persuasive
    value pursuant to Ninth Circuit Rule 36-3) (affirming based on RFC for sedentary work where the

26  plaintiff used a cane to walk); Papen v. Comm'r of Social Sec. Admin., 349 Fed. Appx. 205, 208
    (9th Cir. Oct. 21, 2009) (citable for its persuasive value pursuant to Ninth Circuit Rule 36-3)

27  (affirming based on RFC for sedentary work despite the ALJ's finding that the plaintiff may have
    been required to use a cane).

28

7

1   including: subpoenaing the claimant's physicians, submitting questions to the claimant's

2   physicians, continuing the hearing, or keeping the record open after the hearing to allow

3   supplementation of the record.").  At the start of plaintiff's administrative hearing, the ALJ asked

4   plaintiff's attorney if he was "aware of any additional documents or evidence that would further

5   support [plaintiff's] allegations of impairment," and counsel responded that he was not. [AR at 27.]

6   After the hearing and before the ALJ issued his decision, plaintiff submitted additional evidence,

7   which was considered by the ALJ. [See AR at 9, 252-98.] None of this additional evidence relates

8   to plaintiff's use of a cane. [See id.]  It is plaintiff's burden to prove that she is disabled (Johnson

9   v. Shalala, 60 F.3d 1428, 1432 (9th Cir. 1995)), and to the extent that any additional records from

10  her doctors could have established that she was prescribed a cane, plaintiff was given

11  opportunities to submit them, but did not do so.

12          Finally, even if the ALJ erred by failing to discharge his duty to recontact the unnamed

13  doctor or try to obtain additional evidence, the error is harmless. See Robbins v. Soc. Sec.

14  Admin., 466 F.3d 880, 885 (9th Cir. 2006) (harmless error is error that is "inconsequential to the

15  ultimate nondisability determination") (internal quotations and citation omitted).  First, the ALJ

16  determined that plaintiff can perform sedentary work, and plaintiff cites no authority for the

17  proposition that the use of a cane occasionally or when walking up steep hills, even if prescribed

18  by a doctor, would preclude an RFC for sedentary work. See also note 3, supra.  Moreover,

19  insofar as plaintiff relies on her second contention of error -- that she meets or equals Listing 1.04

20  -- to argue that the ALJ's failure to recontact the unnamed physician was not inconsequential to

21  the ultimate disability determination, that argument also fails. As established infra, even if the ALJ

22  had obtained medical evidence that plaintiff was prescribed a cane for occasional use or to walk

23  "up steep hills," plaintiff would not have met or equaled Listing 1.04.

24          Remand is not warranted on this issue. See Robbins, 466 F.3d at 885.

25  /

26  /

27  /

28  /

1   **B.   ALJ'S FAILURE TO PROPERLY CONSIDER WHETHER PLAINTIFF MEETS AND/OR EQUALS LISTING 1.04**

2

3          Plaintiff also contends that she meets and/or equals the requirements to qualify for a finding

4   of disabled under Listing 1.04.  [JS at 7-13.]  Plaintiff further contends that the ALJ did not properly

5   consider whether she meets and/or equals this listing.  [JS at 12.]

6          At step three of the evaluation process, the ALJ must determine whether a claimant has

7   an impairment of combination of impairments that meets or equals a condition outlined in the

8   Listing.  See 20 C.F.R. §§ 404.1520(d), 416.920(d).  "An ALJ must evaluate the relevant evidence

9   before concluding that a claimant's impairments do not meet or equal a listed impairment.  A

10  boilerplate finding is insufficient to support a conclusion that a claimant's impairment does not do

11  so."  Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001) (citing Marcia v. Sullivan, 900 F.2d 172, 176

12  (9th Cir. 1990)).  "To *meet* a listed impairment, a claimant must establish that he or she meets

13  each characteristic of a listed impairment relevant to his or her claim.  To *equal* a listed

14  impairment,[5] a claimant must establish symptoms, signs and laboratory findings 'at least equal in

15  severity and duration' to the characteristics of a relevant listed impairment ... ."  Tackett v. Apfel,

16  180 F.3d 1094, 1099 (9th Cir. 1999) (quoting 20 C.F.R. § 404.1526) (emphases in original)

17  (footnote added); see also 20 C.F.R. § 416.926(a).  A claimant bears the burden of proving that

18  he or she has an impairment that meets or equals the criteria of a listed impairment.  Burch v.

19  Barnhart, 400 F.3d 676, 683 (9th Cir. 2005).

20         Listing 1.04 requires a finding of disability for an individual who has a "[d]isorder[] of the

21  spine" such as "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis,

22  degenerative disc disease, facet arthritis, or vertebral fracture," that results in compromise of a

23  nerve root or the spinal cord, and which is accompanied by the requirements of Section 1.04A,

24  1.04B, or 1.04C.  20 C.F.R. Part 404, Subpart P, App. 1, § 1.04.  Section 1.04A requires

25  "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain,

26

27  ─────────────────

28         [5]   The Social Security Administration refers to this as "medical equivalence."  See 20 C.F.R. §§ 404.1526, 416.926.

9

limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)." Id. at § 1.04A.  Section 1.04B requires "[s]pinal arachnoiditis, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging ... ." Id. at § 1.04B.  Finally, Section 1.04C requires "lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in an inability to ambulate effectively, as defined in 1.00B2b." Id. at § 1.04C.  Section 1.00B2b provides the following description concerning "What [the Administration] Mean[s] by Inability to Ambulate Effectively":

> (1) Definition.  Inability to ambulate effectively means *an extreme limitation of the ability to walk*; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities.  Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device(s) that *limits the functioning of both upper extremities*. ...

> (2)  To ambulate effectively, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living.  They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the *inability to walk without the use of a walker, two crutches or two canes*, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.  The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Id. at § 1.00B2b (emphases added).

**1.      Meeting Listing 1.04**

Plaintiff argues that she meets the general requirements of Listing 1.04 because she "was diagnosed with ... disc protrusions and bulges, including one which was touching a nerve root." [JS at 11.]  She further asserts that she "had a positive straight-leg raising test on the left side," and "has demonstrated an inability to ambulate effectively, as demonstrated by her need for a

1   cane." [Id.] It therefore appears that plaintiff contends she meets the requirements to be found

2   disabled under Listing 1.04A and/or 1.04C.[6]

3        Plaintiff's assertion that she meets Listing 1.04A and 1.04C fails.  To meet a listing, a

4   claimant's impairments must "meet *all* of the specified medical criteria." Sullivan v. Zebley, 493

5   U.S. 521, 530, 110 S.Ct. 885, 207 L.Ed.2d 967 (1990) (emphasis in original).  "An impairment that

6   manifests only some of those criteria, no matter how severely, does not qualify." Id.

7        First, as defendant contends, "[i]t is unclear that any of [plaintiff's] conditions resulted in

8   compromise of the nerve root." [JS at 14.]  Plaintiff asserts that she "was diagnosed with ... disc

9   protrusions and bulges" [JS at 11], but she does not allege or point to any evidence that she has

10  any of the following spinal disorders that results in compromise of a nerve root or the spinal cord:

11  "herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc

12  disease, facet arthritis, or vertebral fracture." See 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04.

13  The evidence in the record reflects that a February 14, 2008, CT scan of plaintiff's lumbar spine

14  revealed a "3-4mm left paracentral disc protrusion [at L5-S1] which is contiguous with emerging

15  left-sided nerve root" [AR at 191]; that a March 6, 2008, MRI of her lumbar spine revealed "[f]ocal

16  high intensity zones at the L4/5 and L5/S1 disc[s] most consistent with interannular tears ... [,]

17  [m]ild degenerative arthritic changes ... [and] [m]ild levoscoliosis centered at the L5 vertebral body"

18  [AR at 195-96]; that an April 3, 2008, x-ray of plaintiff's cervical spine revealed "mild degenerative

19  changes" [AR at 192]; that a June 25, 2009, MRI of her cervical spine revealed "a small 2mm disc

20  bulge at C4-C5 without severe central stenosis or foraminal narrowing at any level" and noted that

21  "there is cervical kyphosis," but that "the cervical spinal cord is unremarkable" [AR at 248-49]; and

22  that a June 25, 2009, MRI of her lumbar spine revealed "a 3[]mm left lateral disc bulge with mild

23  left foraminal narrowing [at L2-L3]" and "3[]mm disc bulges with facet hypertrophy at [L4-L5 and

24  L5-S1]." [AR at 250-51.]  From this evidence, it is not clear that plaintiff has a disorder of the spine

25  that has resulted in compromise of a nerve root or the spinal cord, either in her cervical spine or

26

27  _____

28     [6]   Plaintiff does not contend that she meets Listing 1.04B and she does not point to any
    evidence in the record indicating that she has spinal arachnoiditis.  [See JS 7-13.]

in her lumbar spine.  Even assuming plaintiff has such a condition, however, plaintiff's assertion that she meets Listing 1.04 fails because, as discussed below, she has not established that she meets "*all* of the specified medical criteria" for either Listing 1.04A or 1.04C.  See Sullivan, 493 U.S. at 530.

Plaintiff contends that she meets Listing 1.04A because she has a disc protrusion that is "*touching* a nerve root" [JS at 11 (emphasis added); AR at 191], but she does not point to evidence of any disc protrusion that has resulted in the *compression* of a nerve root.  Plaintiff also points out, relying on the requirements of Listing 1.04A when "there is involvement of the lower back," that the consultative examiner found on October 6, 2008, that her "[s]traight-leg-raising test is positive in the seated position."  [JS at 11; AR at 224.]  However, the consultative examiner did not note a positive straight leg-raising test in the *supine* position [see AR at 224], which is also a requirement to meet Listing 1.04A "if there is involvement of the lower back."  See 20 C.F.R. Part 404, Subpart P, App. 1, § 1.04.  Moreover, in the only other examination in the record where a straight leg-raising test was performed, the examining physician noted that plaintiff was "*able* to perform SLR BLE" (i.e., straight-leg raising in her bilateral lower extremities), albeit "[with] weakness" in both lower extremities, which "[plaintiff] attribute[d] to [low blood pressure]."  [AR at 202-03 (emphasis added).]  That physician also noted that plaintiff had "numbness to digit 1-5 [with] passive [straight leg-raising] [with] hip at 90 degrees lying down, but denie[d] similar symptoms [with] [straight-leg-raising] [and] hip at 90 degrees while sitting down."  [AR at 202.]  Plaintiff does not assert that this examination was evidence of a positive straight leg-raising test in the supine position, and the Court cannot conclude that it was clear evidence of such.

Moreover, even if plaintiff relied on her cervical spine impairments to contend that she meets Listing 1.04A, she has not shown that she has limitation of motion in, or sensory or reflex loss in, her cervical spine.  The consultative examiner who examined plaintiff on October 6, 2008, found that plaintiff's range of motion in her cervical spine was within normal limits, and also noted that there was no evidence of muscle spasm or tenderness in her cervical spine.  [AR at 224.]

Next, plaintiff also has not established that she meets Listing 1.04C, as she has not demonstrated that she has an "inability to ambulate effectively" as defined in Section 1.00B2b.

Even if, as plaintiff asserts, she occasionally uses a cane to walk, or always uses a cane to walk up steep hills, Section 1.00B2b defines the "inability to ambulate effectively" as the inability to ambulate "without the use of hand-held assistive device(s) that limits the functioning of both upper extremities," such as "a walker, two crutches or two canes." 20 C.F.R. Part 404, Subpart P, App. 1, § 1.00B2b. Plaintiff does not assert -- nor is there any evidence in the record to support an assertion -- that in order to ambulate at all, she requires two canes, or any other assistive device that limits the functioning of both upper extremities. Thus, plaintiff has not shown that she meets Listing 1.04C.

Plaintiff also contends, relying on Lewis v. Apfel, that the ALJ committed reversible error by failing to "state which listings he considered" and "specify what evidence he considered regarding whether Plaintiff met or equaled any listings." [JS at 7, 12.] In Lewis, the plaintiff argued that the ALJ committed error by failing to elaborate on his conclusion that the plaintiff's seizure disorder did not meet one of the listings. Lewis, 236 F.3d at 512. In order to meet the grand mal epilepsy listing, the plaintiff in Lewis had to show that he had grand mal seizures occurring more frequently than once a month, despite at least 3 months of prescribed treatment, with either daytime episodes, or nocturnal episodes "manifesting residuals which interfere significantly with activity during the day." Id. at 512, n.10. To meet the petit mal epilepsy listing, the plaintiff had to establish that he had petit mal seizures occurring more frequently than once a week, despite at least 3 months of prescribed treatment, "[w]ith alteration of consciousness and transient postictal manifestations of unconventional behavior or significant interference with activity during the day." Id. The ALJ in Lewis found that the plaintiff did not meet the listing because he had not complied with his prescribed therapy. Id. at 513-14. As such, the ALJ concluded that the plaintiff "[did] not have an impairment or combination of impairments listed in ... the regulations," without making specific findings as to "the nature and extent of each type of seizure noted in [his] medical records," "whether [he] had nighttime seizures that affected his daytime activity," and "the average frequency of [his] grand mal or petit mal seizures." Id. at 512-13. The Ninth Circuit found that "[t]hese omissions [by the ALJ] might have required reversal or remand ... were it not for the ALJ's

finding that [the plaintiff's] seizures were largely a result of noncompliance with his prescribed therapy." Id. at 513.

Plaintiff's reliance on Lewis is inapposite. In Lewis, the plaintiff presented evidence that he was hospitalized five times for grand mal seizures, and that he reported or was treated for seizure episodes on four additional occasions. Id. at 507. Furthermore, the plaintiff's brother testified that the plaintiff had petit mal seizures every night, and that he had about 150 daytime petit mal seizures over a period of two years. Id. at 507, 511. Other family members of the plaintiff also testified concerning his daytime fatigue and grogginess following his seizures. Id. Thus, the plaintiff in Lewis presented evidence to establish that he met each requirement of the epilepsy listings. Here, plaintiff has not pointed to evidence establishing that she meets "all of the specified medical criteria" of Listing 1.04. See Sullivan, 493 U.S. at 530 (emphasis omitted). As such, Lewis fails to establish that the ALJ in this case erred by not stating the specific listings and medical evidence he considered at step three.

Moreover, the ALJ's conclusion that plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in [Appendix 1]" [AR at 14], is adequately supported by his discussion of the evidence elsewhere in his decision. As long as the ALJ's decision contains "an adequate statement of the foundations on which the ultimate factual conclusions are based," "[i]t is unnecessary to require the [ALJ], as a matter of law, to state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1200-01 (9th Cir. 1990) (where ALJ found that the plaintiff's impairments did not meet any listing, but did not state what evidence supported that conclusion, ALJ's four-page discussion of the record elsewhere in the decision, including information from each physician and a summary of the plaintiff's testimony, constituted adequate support for the conclusion) (internal quotations and citation omitted); see also Bauslaugh v. Astrue, 2010 WL 1875800, at *3 (C.D. Cal. May 11, 2010) ("a well-developed discussion of the factual basis of a claimant's impairments elsewhere in a hearing decision may, under certain circumstances, support an unexplained finding of no medical equivalence at step three") (citing id.). Here, the ALJ's step two findings acknowledged a significant number of plaintiff's spinal impairments, including disc

1    bulges at C4-C5, L2-L3, L4-L5, and L5-S1, as well as a posterior annular tear in the posterior disc

2    margin at L5-S1.  [See AR at 12.]  Moreover, in making his step three determination, the ALJ

3    stated that he was "rely[ing] on the opinions of the consultative, examining physician and

4    psychiatrist, and the State Agency medical consultants, who reviewed the available medical

5    records and found no evidence to substantiate that any of [plaintiff's] impairments, alone or in

6    combination, meet or medically equal any of the listings." [AR at 14 (citations omitted).]  None of

7    the examining physician or State Agency physician reports cited by the ALJ reflected that any of

8    those physicians concluded plaintiff meets any listing.  [See AR at 218-46.]  Finally, later in his

9    decision, the ALJ spent two and one-half pages summarizing plaintiff's testimony and discussing

10   the various physicians' opinions.  [See AR at 15-17.]  These portions of the ALJ's decision

11   constituted "an adequate statement of the foundations on which the ultimate factual conclusions

12   are based." See Gonzalez, 914 F.2d at 1201 (internal quotations and citation omitted); see also

13   Bauslaugh, 2010 WL 1875800, at *3 (under Gonzalez, ALJ's single-sentence finding that the

14   medical record lacked evidence of impairments that would meet or equal a listed impairment was

15   supported by substantial evidence where, at step four, ALJ reviewed the plaintiff's medical history,

16   his hearing testimony, and the opinions of the consultative examiner and medical expert).

17          **2.     Equivalence to Listing 1.04**

18          Plaintiff asserts that she "does indeed ... at least equal the criteria of [Listing] 1.04." [JS at

19   9.]  Plaintiff further contends that the ALJ erred by not making sufficient findings to show that he

20   considered equivalence, citing Marcia v. Sullivan, 900 F.2d 172, and Lewis, 236 F.3d 503.  [JS

21   at 11-13.]

22          In Marcia, the Ninth Circuit stated that "in determining whether a claimant equals a listing

23   under step three of the Secretary's disability evaluation process, the ALJ must explain adequately

24   his evaluation of alternative tests and the combined effects of the impairments." Marcia, 900 F.2d

25   at 176.  Where the ALJ in Marcia concluded merely that "[t]he [plaintiff] has failed to provide

26   evidence of medically determinable impairments that meet or equal the Listings," the Court held

27   that "this finding is insufficient to show that the ALJ actually considered equivalence." Id.

28   (emphasis omitted). Marcia is distinguishable from the instant case, however, because the plaintiff

1  in Marcia had "presented evidence in an effort to establish equivalence." Id. Here, apart from the

2  evidence discussed supra and plaintiff's conclusory assertions that she equals Listing 1.04,

3  plaintiff does not offer any theory as to how her impairments combine to equal Listing 1.04.

4  Indeed, in Lewis, which plaintiff also cites in an attempt to support her argument, the Court

5  concluded that because the plaintiff "ha[d] offered no theory, plausible or otherwise, as to how his

6  [impairments] combined to equal a listed impairment," the ALJ was *not* required to discuss the

7  combined effects of the plaintiff's impairments or compare them to any listing.  Lewis, 236 F.3d

8  at 514.  Plaintiff's failure to present a theory of equivalence is fatal to her argument that her

9  impairments equal Listing 1.04, or that the ALJ erred by not giving a more detailed explanation of

10  his conclusion on the issue.  See id.; Burch, 400 F.3d at 683 ("An ALJ is not required to discuss

11  the combined effects of a claimant's impairments or compare them to any listing in an equivalency

12  determination, unless the claimant presents evidence in an effort to establish equivalence.") (citing

13  id.).

14        Plaintiff has failed to establish that her impairments meet or equal Listing 1.04, and the ALJ

15  did not err by failing to elaborate on his conclusion that plaintiff's impairments do not meet or equal

16  any listing.  Remand is not warranted on this issue.

17

18                                           **VI.**

19                                     **CONCLUSION**

20        **IT IS HEREBY ORDERED** that: 1. plaintiff's request for reversal, or in the alternative,

21  remand, is **denied**; and  2. the decision of the Commissioner is **affirmed**.

22        **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the

23  Judgment herein on all parties or their counsel.

24        **This Memorandum Opinion and Order is not intended for publication, nor is it**

25  **intended to be included in or submitted to any online service such as Westlaw or Lexis.**

26

27  DATED: August 23, 2012

                                    _____

28                                            PAUL L. ABRAMS
                                     UNITED STATES MAGISTRATE JUDGE